UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

SUSAN TAYLOR, individually and on
behalf of all others similarly situated,

        Plaintiff,

-against-

VERIZON COMMUNICATIONS INC.,

        Defendant.

------------------------------------------------------------x

25 Civ. 1081 (CM)

## DECISION AND ORDER COMPELLING ARBITRATION AND STAYING THE UNDERLYING ACTION

McMahon, J.:

Susan Taylor is a customer of Verizon Wireless. She has filed a putative class action against Verizon, alleging various claims for relief relating to Verizon's alleged disclosure of customer information without consent.

Taylor first used Verizon as her wireless service provider in 2013. Like all customers of Verizon, when Taylor purchased service from Verizon Wireless she became subject to the terms of a Customer Agreement – a document that outlined the terms and conditions pursuant to which Verizon agreed to provide services to its customers. One of Verizon's conditions for providing wireless service to its customers was acquiescence to a mandatory arbitration clause.

Taylor was required to sign a Customer Agreement most recently in June 2023, when she upgraded her device and her service plan in June of 2023. The version of the Customer Agreement to which she assented became effective in February 2023. It included the following language:

HOW DO I RESOLVE DISPUTES WITH VERIZON?

YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT AS DISCUSSED BELOW. YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. WHILE THE PROCEDURES IN ARBITRATION MAY BE DIFFERENT, AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD, SUBJECT TO THE LIMITS ON ARBITRATOR AUTHORITY SET FORTH BELOW. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. THE SAME DEFENSES ARE ALSO AVAILABLE TO BOTH PARTIES AS WOULD BE AVIALABLE IN COURT INCLUDE ANY APPLICABLE STATUTE OF LIMITATIONS, WE ALSO BOTH AGREE THAT

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES OR AS SPECIFICALLY NOTED BELOW, ANY DISPUTE THAT IN ANY WAY RELATED TO OR ARISES OUT OF THIS AGREEMENT, INCLUDING THE VALIDITY, ENFORCEABILITY, OR SCOPE OF ANY PORTION OF THIS AGREEMENT (INCLUDING THE AGREEMENT TO ARBITRATE),OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US, OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES, OR FROM OUR EFFORTS TO COLLECT AMOUNTS YOU MAY OWE US FOR SUCH PRODUCTS OR SERVICES, INCLUDING ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION (AAA).

(2) UNLESS YOU AND VERIZON AGREE OTHERWISE, THE ARBITRATION WILL TAKE PLACCE IN THE COUNTY OF YOUR BILLING ADDRES, AND THE AAA'S CONSUMER ARBITRATION RULES WILL APPLY. IF THE AAA REFUSES TO ENFORCE ANY PART OF THE ARBITRATION PROVISION, YOU AND VERIZON WILL SELECT ANOTHER ARBITRATION PROVIDER. IF THERE IS NO AGREEMENTM THE COURT WILL CHOOSE, UNLESS OTHERWISE PROVIDED IN THIS AGREMEENT, THE ARBITRATOR(S) SHALL HAVE EXCLUSIVE AUTHORITY TO ARBITRATE, INCLUDING BUT NOT LIMITED TO ANY CLAIM TAT ALL OR PART OF THE AGREEMENT TO ARBITRATE IS VOID FOR ANY REASON. YOU CAN GET PROCEDURES, RULES AND FEE INCORMATION FROM THE AAA..OR FROM US.

Plaintiff could not upgrade her service without scrolling through the entire Customer Service Agreement on her device and then signing an acknowledgement that she had read the Customer Agreement and consented to its terms. Under the heading "Customer Agreement," it reads: "I have read and agree to the Verizon Wireless Customer Agreement and Verizon Privacy Policy, *including settlement of disputes by arbitration instead of jury trial*, as well as the terms of my plan and any optional services I have agreed to purchase. By signing below I accept the agreements above." (Emphasis added, not in original). Verizon has provided the court with a copy of the Plaintiff's signature, which was affixed electronically. Plaintiff does not deny that she signed the Customer Agreement.

Plaintiff also had to accept the Device Payment Agreement for her newly acquired device. That agreement, too, contained an arbitration clause:

> THIS DEVICE PAYMENT AGREEMENT REQUIRES THAT YOU MAINTAIN SERVICE WITH VERIZON WIRELESS UNDER YOUR CUSTOMER SERVICE AGREEMENT. ALTHOUGH YOUR CUSTOMER AGREEMENT IS A SEPARATE DOCUMENT, EXCEPT AS PROHIBITED BY APPLICABLE LAW, THE WAIVERS AND LIMITATIONS OF LIABILITY, DISCLAIMER OF WARRANTIES, AND OTHER PROVISIONS OF YOUR CUSTOMER AGREEMENT ARE INCORPORATED BY THIS REFERENCE IN THIS AGREEMENT, AND SHALL SURVIVE TERMINATION OF YOUR CUSTOMER A AGREEMENT. ADDITIONALLY, ANY DISPUTES UNDER THIS DEVICE PAYMENT AGREEMENT SHALL BE RESOLVED IN ACCORDANCE WITH THE DISPUTE RESOLUTION PROVISIONS IN YOUR CUSTOMER AGREEMENT UNDER THE HEADING: HOW DO I RESOLVE DISPUTES WITH VERIZON WIRELESS, WHICH TERMS ARE INCORPORATED BY REFERENCE. SPECIFICALLY, YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE ALL DISPUTES UNDER THIS DEVICE PAYMENT AGREEMENT ONLY BY ARBITRATION OR SMALL CLAIMS COURT AND YOU WAIVE ANY RIGHT TO A JUDGE OR JURY IN ANY ARBITRATION.

So the record establishes conclusively that there exists an arbitration clause between Verizon and Plaintiff. Taylor may not have wanted to agree to arbitrate disputes, but in order to obtain service from Verizon, she did so agree. She agreed to arbitrate all disputes "that in any way relates to or arises out of" the Customer Service Agreement or that arise "under this device payment agreement." There was no opportunity to bargain, and Verizon was certainly in the superior position *vis a vis* a potential customer (especially as I have no doubt that every other wireless service provider's customer service agreement contained a similar arbitration clause). However, Plaintiff chose to do business with Verizon after being advised of and agreeing to its take-it-or-leave-it terms and conditions.

The record contains no evidence that Plaintiff signed any arbitration agreement prior to June 7, 2023. The Customer Service Agreement and the Device Payment Agreement that are presently before the court limit arbitration thereunder to disputes that arise out of or relate to those agreements – not to any and all disputes between Taylor and Verizon.

**The Instant Complaint**

Plaintiff alleges that, throughout the course of her 12-year commercial relationship with Verizon – which includes the period beginning June 7, 2023 – the latter disclosed confidential information about her usage, her web browsing history, and various other "customer proprietary" network information – all allegedly without her consent. Plaintiff alleges that Verizon must protect the confidentiality of this information pursuant to the Telecommunications Act of 1996, 47 U.S.C. § 222, and that it may not disclose this information without her consent.

Of course only the most naïve customer could possibly be unaware that Verizon sells all kinds of customer data to advertisers. As the Complaint admits, Verizon discloses on its software that it "uses a variety of tracking, validation, and other technologies, such as cookies, pixels, web

4

beacons, tags, scripts, or similar technologies on our pages and the browsers you use," and further advises that "we may disclose information using application programming interfaces" – specifically to "advertisers [who] are trying to reach, to serve targeted advertising to you on our sites and other sites and platforms, or to find other potential customers." (See Complaint ¶ 30). In other words, the fact that Verizon sells customer information to advertisers is hardly a secret.

Moreover, Plaintiff admits that the FCC, as long ago as 2002, conclude that it would not require carriers to obtain express customer consent for all sharing of information between a carrier, its affiliates and third parties – although there are complicated "opt-in" and "opt-out" rules applicable to the use and sharing of such data.

Plaintiff would like to maintain a class action alleging that Verizon is violating various statutes – specifically, the Telecommunications Act, 47 U.S.C. § 222(a); the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; the Federal Wiretap Act, 18 U.S.C. §2511(1)(a); and the Georgie Unfair Deceptive Trade Practices Act[1] – by disclosing information about her without her consent. Plaintiff asserts that, to the extent Verizon participates in an "opt out" program to allow its customers to keep their data private, it is too complicated and cumbersome and not sufficiently protective. Plaintiff also alleges that Verizon's practices invades her privacy, constitutes negligent dissemination of her information, and unjustly enriches Verizon. She seeks certification of a nationwide class, injunctive relief to protect Verizon's customers from data sharing absent express consent, and extensive damages.

---

[1] Plaintiff also purports to plead a claim under the Federal Declaratory Judgment Act, but that act does not create a cause of action (which is why it cannot be relied on to confer federal jurisdiction) – declaratory judgment is simply a form of relief, like damages or an injunction.

**Plaintiff Cannot Avoid the Consequence of Her Arbitration Agreement**

Verizon has established beyond peradventure that Plaintiff signed two arbitration agreements on June 7, 2023, pursuant to which she agreed to arbitrate all disputes arising out of or related to those agreements. Taylor does not dispute this fact. The arbitration agreements were not hidden from her. They were printed in large type, which could not be missed if one were actually reading the Customer Agreement before signing it. Moreover, just above her signature line, a short statement reiterated that Plaintiff was agreeing to all the terms of the Agreement, including specifically the agreement to arbitrate all disputes. Plaintiff does not aver that the signature in the moving papers is not her signature. Furthermore, Plaintiff has continued to use Verizon's service since signing the agreement. One would think – end of story. There is an agreement to arbitrate.

That is especially so because this court has no power to determine the scope of the agreement to arbitrate, or whether all or any portion of a particular dispute falls within or without the agreement. The agreement contains a broad delegation clause that delegates the issue of whether a particular dispute is arbitrable to the arbitrator. It also incorporates the American Arbitration Association's Consumer Arbitration Rules, which contain a similar delegation provision. Both of these provisions evidence a clear and unmistakable intent to delegate the issue of arbitrability to the arbitrator. *Cartagena Enters., Inc. v. J. Walter Thompson Co.*, 2013 WL 5664992, at *3 (S.D.N.Y. Oct. 16, 2013). This court has no power to override the parties' agreement and decide, for example, whether privacy issues that arose prior to the date on which

Taylor signed the arbitration agreements are or are not subject to arbitration. That matter has been delegated to the arbitrator for resolution.[2]

Nonetheless, Plaintiff asks the court to invalidate the Agreement. None of her arguments are convincing.

First, Plaintiff challenges the arbitration agreement as a contract of adhesion. Her attack fails. Under Georgia law, which the parties agree applies here, a finding of unconscionability must clear a high bar, both procedurally and substantively. *Hensley v. S.G.T., Inc.*, 2015 WL 4647979, at *4 (N.D. Ga. Aug. 5, 2015). The parties' manifestly unequal bargaining power does not render a contract unconscionable – even if it qualifies as a contract of adhesion – because the Plaintiff was on bolded text notice of the objectionable term (the arbitration agreement) and nonetheless elected to sign it and do business with Verizon. *Neuburger v. Xerox State & Loc. Sols., Inc.*, 2015 WL 13651666, at *4 (N.D. Ga. April 20, 2015); *R&R adopted*, 2015 WL 13651667 (N.D. Ga. May 15, 2015).

Plaintiff asserts that the Customer Agreement was procedurally unconscionable because she lacked a meaningful choice in that Verizon's privacy practices were not explained to her at the time she signed the agreement. But not knowing about the defendant's privacy practices has been specifically held not to deprive a party of a meaningful choice about whether or not to sign an agreement that contained a disclosed arbitration clause. *Thomas v. Citi Trends, Inc.*, 2025 WL 817127, at *7 (S.D. Ga. March 14, 2025). Procedural unconscionability requires a showing that the plaintiff was essentially defrauded into signing the arbitration agreement. *Howard v. Ratcliffe*, 2024 Ga. State LEXIS 6763, at *4 (Chatham Cty. State Ct. Nov. 25, 2024); *see also Jones v.*

---

[2] Verizon appears to agree that Plaintiff is not required to arbitrate claims that predated the signing of the arbitration agreement. See Verizon Reply Brief (Dkt. #23) at 8 (carryover paragraph). However, because of the delegation clause in the arbitration agreement, Plaintiff needs to point that out to the arbitrator -- not to this court.

*Waffle House, Inc.*, 866 F. 3d 1257, 1271 n.1 (11th Cir. 2017). There is no evidence of any fraud in the record before this court.

Plaintiff argues that the arbitration agreement is substantively unconscionable because it permits Verizon "to engage in unchecked market behavior because none of its customers can challenge the arbitration agreement or [Verizon's] infringement of their statutory privacy rights in court." (Plaintiff's Opposition Br. (Dkt. # 22) at 12). The problem with her argument is that no less a court than the United States Supreme Court has rejected the notion that an agreement that deprives a plaintiff of her day in court is unconscionable, provided she has some forum available in which to vindicate her rights. *Mitsubishi Motors Corp. v. Soler-Chrysler-Plymouth*, 473 U.S. 614, 628 (1985); *Caley v. Gulfstream Aero Corp.*, 428 F. 3d 1359, 1372 (11th Cir. 2005). This court sympathizes with the plaintiff and all like her; I view as unfortunate the fact that, over the past half century, so many disputes among commercially unequal parties have been diverted from courts of law to private "courts" – a development I do not believe was anticipated or desired by the framers of the Federal Arbitration Act. But that ship has long since sailed. It simply does not violate public policy for courts to enforce private agreements to arbitrate – even agreements between behemoth corporations and individuals, and even agreements that cover disputes over violations of federal laws like the Telecommunications Act. Courts have consistently found that claims arising under federal statutes can be arbitrated without violating public policy. *Caley, supra.*, 428 F. 3d at 1367. Georgia law on the point is well settled, *Park v. E*TRADE Fin. Corp. Servs. Inc.*, 2023 WL 11779917, at *8-9 (N.D. Ga. July 25, 2023), as is the law in this circuit. *Guyden v. Aetna, Inc.*, 544 F. 3d 376, 382 (2d Cir. 2008).

The parties disagree about whether Plaintiff has mounted a specific attack on the delegation clause separate and apart from her attack on the unconscionability of the arbitration

clause as a whole. Assuming *arguendo* that she has done so, her attack fails, for the same reasons that her attack on the arbitration agreement as a whole fails. Her arguments as to both substantive and procedural unconscionability as regards the delegation clause are nothing more than a reiteration of her arguments against the validity of the arbitration clause in its entirety: she urges that the clause is "oppressive" and that she was deprived of "meaningful choice" regarding arbitration; that delegation violates public policy, and that delegating disproportionately favors Verizon, by allowing it to "circumvent statutory requirements" (none is specified), to "engage in unchecked market behavior," and to "avoid the consequences of an adverse legal precedent." Opposition Brief, Dkt. #22, at 12).

But Plaintiff did have a choice; she could have chosen not to do business with Verizon. She did not make that choice. She is bound by the terms of the contract to which she agreed, even if she was in no position to negotiate its terms.

## CONCLUSION

Verizon's motion to compel arbitration is GRANTED. Per the Commercial Arbitration Rules of the AAA, it is for the arbitrator to determine whether any portion of the claims asserted in the complaint are not arbitrable because they do not fall within the scope of the arbitration agreement.

The Second Circuit prefers that district courts stay rather than dismiss an underlying action pending arbitration. *See Katz v. Cellco P'ship*, 794 F.3d 341, 345-346 (2d Cir. 2015). I therefore direct the Clerk of Court to place this case on the court's inactive calendar. If any party wishes to reactivate the case after the completion of arbitration – to confirm or vacate an award – that party should file a motion to reopen.

This constitutes the decision and order of the Court. The Clerk should remove the motion at Docket # 15 from the court's list of open motions.

Dated: July 15, 2025

_____
U.S.D.J.

BY ECF TO ALL COUNSEL